**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA JOAQUIN, on behalf of herself and others similarly situated, | |
| Plaintiff, | Civil Action No. 15-8194 (MAS) (DEA) |
| v. | **MEMORANDUM OPINION** |
| DIRECTV GROUP HOLDINGS, INC., et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on Defendants DIRECTV, LLC, improperly pleaded as DIRECTV Group Holdings, Inc. ("DIRECTV"), Verizon Communications, Inc. ("Verizon"), Lonstein Law Offices, P.C. ("Lonstein Law"), and Julie Cohen Lonstein's ("Ms. Lonstein") (collectively, "Defendants") respective motions to stay and compel arbitration of Plaintiff Angela Joaquin's ("Plaintiff") Complaint pursuant to 9 U.S.C. § 1. (ECF Nos. 15, 16, 17.) Plaintiff submitted opposition (ECF Nos. 31, 35), and Defendants replied (ECF Nos. 36, 37, 38). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Rule 78.1. For the reasons stated below, Defendants DIRECTV and Verizon's motions to stay and compel arbitration are granted, and Defendants Lonstein Law and Ms. Lonstein's motion to compel arbitration is denied. The case will be stayed as to all Defendants pending arbitration.

I.  **Background**

This putative class action lawsuit arises from what Plaintiff alleges is a fraudulent scheme by Defendants centering around the sale of satellite cable television services. Generally, Plaintiff asserts that small business owners are solicited and offered certain television services for their businesses, have their accounts classified as "residential," and then, after being observed by what Defendants call an independent auditor, are sent legal correspondence alleging theft of cable television services and threatening legal action if the owners do not pay a certain amount and/or become DIRECTV "business subscribers." (Compl. ¶¶ 2-6, ECF No. 1-3.) Plaintiff additionally alleges that Defendants tended to target minority small business owners upon the apparent belief that this group would be less likely to dispute any allegations made by Defendants. (*Id.* ¶ 6.)

Plaintiff is the owner of Joaquin LLC, which does business as "Angela's Salon and Supplies," a beauty salon in New Brunswick, New Jersey. (*Id.* ¶ 20.) Plaintiff states that in October or November of 2010 an individual, who identified himself as a representative of Verizon, entered her store and sold Plaintiff the "Verizon Triple Play" bundle, which included telephone and Internet services from Verizon and satellite cable television services from DIRECTV. (*Id.* ¶ 21.) Plaintiff was not told that the television services would be provided under a residential account, and, upon purchasing the Triple Play, did not sign a contract, agreement, or any other document. (*Id.* ¶¶ 24-25.) Plaintiff states that the only documents she ever received in connection with the Triple Play were monthly invoices from Verizon. (*Id.* ¶ 29.) Approximately four years later, Plaintiff switched providers for the telephone and Internet services, but continued to receive cable television services from DIRECTV. (*Id.* ¶¶ 32-33.) Subsequently, Plaintiff received correspondence dated August 6, 2015, from Lonstein Law and signed by Ms. Lonstein (collectively, the "Lonstein Defendants"), stating that an independent auditor had "'observed and

recorded [Plaintiff's] exhibition of DIRECTV programming' without authorization." (*Id.* ¶ 36.) The correspondence requested that Plaintiff, or her attorney, contact Lonstein Law within seven days, after which "DIRECTV w[ould] abandon its attempts to negotiate and/or amicably resolve [the] matter." (*Id.* ¶ 36; Compl., Ex. C ("August 6th Letter"), ECF No. 1-3.) The Lonstein Defendants sent another piece of correspondence dated August 17, 2015, offering to settle the issue for $10,000 or, alternatively, for $7,500 along with Plaintiff agreeing to become a DIRECTV business subscriber. (Compl. ¶ 37; Compl., Ex. D ("August 17th Letter"), ECF No. 1-3.)

## II.     Standard of Review

In 1925, Congress passed the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, to counter "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Pursuant to the FAA, "[a] written provision in any . . . contract . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This text reflects the overarching principle that arbitration is a matter of contract." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). In considering the propriety of arbitration, a court must make "a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). In addition, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (internal citation and quotation omitted).

In *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, the Third Circuit clarified the standards to be applied to motions to compel arbitration. 716 F.3d 764 (3d Cir. 2013). The *Guidotti*

3

court summarized that:

> when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.

*Id.* at 776 (internal citations and quotations omitted).

### III. Analysis

DIRECTV, Verizon, and the Lonstein Defendants each move to compel arbitration. (ECF Nos. 15, 16, 17.) DIRECTV and Verizon argue that Plaintiff must arbitrate her claims, as she entered into valid customer agreements with both companies when she accepted their services, and the arbitration clauses within those agreements encompass the claims at issue. (DIRECTV Def.'s Moving Br. 9-16, ECF No. 17-1; Verizon Def.'s Moving Br. 10-12,17-19, ECF No. 16-1.) The Lonstein Defendants argue that, although there is no arbitration agreement between themselves and Plaintiff, Plaintiff nonetheless must arbitrate her claims against them because they are sufficiently "intertwined" with her claims against DIRECTV and Verizon. (Lonstein Defs' Moving Br. 5-6, ECF No. 15-1.) In opposition, Plaintiff argues that she is not required to arbitrate her claims because: (1) both DIRECTV and Verizon have failed to establish that Plaintiff entered into a valid agreement to arbitrate; (2) per the Verizon Internet Terms of Service, the DIRECTV Customer Agreement applies to Plaintiff's claims against Verizon because they involve the use of third-party services; (3) New Jersey state law has rejected "intertwinement" as a basis for compelling arbitration with a non-signatory party; and (4) Plaintiff's claims are encompassed in

4

the DIRECTV Customer Agreement provision excluding from arbitration "any dispute involving a violation of the Communications Act of 1934." (Pl.'s First Opp'n Br. 3, 12, 17, ECF No. 31; Pl.'s Second Opp'n Br. 3, 4, 8, ECF No. 35.)

### A. Existence of Valid Arbitration Agreements

Plaintiff disputes that she entered into an agreement to arbitrate with either DIRECTV or Verizon, arguing that the Defendants have not sufficiently established the existence of such agreements, and that she is entitled to discovery on this issue. (Pl.'s First Opp'n Br. 12; Pl.'s Second Opp'n Br. 8.) Plaintiff relies on *Guidotti*, 716 F.3d at 776, arguing that, because it is not apparent from the Complaint that an agreement to arbitrate exists, the motions to compel arbitration must be treated as a motions for summary judgment, with limited discovery afforded to the non-moving party. (Pl.'s First Opp'n Br. 12-13; Pl.'s Second Opp'n Br. 8-9.) Plaintiff states that "nothing in the [C]omplaint . . . even suggests the existence of an agreement to arbitrate," and that the Complaint does not rely on any documents containing an agreement to arbitrate, or "even make reference to any contract provisions." (Pl.'s First Opp'n Br. 13-14; Pl.'s Second Opp'n Br. 9.)

While the *Guidotti* court articulated the appropriate standards to be applied to a motion to compel arbitration, the facts here are distinguishable from the facts that the *Guidotti* court held necessitated discovery. In *Guidotti*, the dispositive issue was whether an account agreement document, which included an arbitration clause, was included in the initial package of documents emailed to the plaintiff. *Guidotti*, 716 F.3d at 769. The *Guidotti* plaintiff alleged that the defendants failed to supply the agreement containing the arbitration provision until several weeks after she contracted with them. *Id.* at 777. The *Guidotti* plaintiff came forward with sufficient facts to place the agreement to arbitrate at issue by alleging that all of the documents the defendants claimed to

5

have sent to her on the initial contract date, except for the agreement containing the arbitration clause, had an encoded "DocuSign" header line. *Id.* Therefore, the *Guidotti* Court found that the plaintiff's denial was "not entirely unsupported" and went beyond "a mere 'naked assertion' that she 'did not intend to be bound by the terms' of the [a]ccount [a]greement." *Id.* (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 55 (3d Cir. 1980)).

Here, in contrast, Plaintiff has not stated specific facts sufficient to put the agreements to arbitrate at issue. Specifically, Plaintiff "has not produced any affidavits to support her claim" that she did not assent to the arbitration provisions. *Guidotti*, 716 F.3d at 778 (citing *Par-Knit Mills*, 636 F.2d at 54, and *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156 (3d Cir. 2009) (in both, the Third Circuit found that the submission of an affidavit that the party opposing arbitration never received the document with the arbitration provision, never signed the document, and/or never agreed to arbitrate created a genuine dispute of material fact)). Additionally, unlike the plaintiff in *Guidotti*, Plaintiff has not come forward with any evidence in response to Defendants' motion to compel arbitration to trigger the summary judgment standard. In support of her argument, Plaintiff relies on one line of the Complaint that provides a legal conclusion that "there was no formation of a contract or agreement," and thus "there is no binding or effective agreement to arbitrate her claims or waiver and/or release of her right to file a lawsuit and/or a class action." (Compl. ¶ 39.) However, Plaintiff does not unequivocally deny having received the DIRECTV Customer Agreement or Verizon Internet Terms of Service, and courts have held that plaintiffs have agreed to the terms and conditions provided in similar customer agreements by continuing to accept defendants' services. *Stachurski v. DIRECTV, Inc.*, 642 F. Supp. 2d 758, 766 (N.D. Ohio 2009); *Clements v. DIRECTV, LLC*, No. 13-4048, 2014 WL 1266834, at *3 (W.D. Ark. Mar. 26, 2014). Plaintiff's unsupported legal conclusion is not sufficient under *Guidotti* to apply the

summary judgment standard to Defendants' motions to compel arbitration. Without Plaintiff providing specific facts, or even an unequivocal denial, to call the agreement to arbitrate into issue, the Court does not find that discovery is warranted here. Accordingly, the Court finds that DIRECTV and Verizon have established the existence of valid agreements to arbitrate between themselves and Plaintiff.

### B. Applicability of the Verizon Arbitration Agreement

Despite Plaintiff's argument in opposition to DIRECTV and the Lonstein Defendants that there was no agreement to arbitrate between Plaintiff and DIRECTV, Plaintiff addresses Verizon's motion to compel arbitration by arguing that, since the Verizon Internet Terms of Service provide that third-party services sold by Verizon are subject to the terms of service of the third party provider, Plaintiff's claims are subject to the DIRECTV Customer Agreement because they involve Plaintiff's use of DIRECTV satellite television services. (Pl.'s Second Opp'n Br. 3.)

Verizon's Internet Terms of Service agreement states, in pertinent part:

> Acceptance by you of this Agreement occurs upon the earlier of: (a) your acceptance of this Agreement electronically during an online order, registration or when installing the Software or the Equipment; (b) your use of the Service; or (c) your retention of the Software or Equipment we provide beyond thirty (30) days following delivery.
>
> . . .
>
> [e]xcept as otherwise required by law, you and Verizon agree that the Federal Arbitration Act and the substantive laws of the state of the customer[] . . . will be applied to govern, construe and enforce all of the rights and duties of the parties arising from or relating in any way to the subject matter of this Agreement.

(Decl. of Debra Opie ("Opie Decl."), Ex. B ¶¶ 1, 15.4, ECF No. 16-4.) Plaintiff alleges in her Complaint that "John Doe #1, who identified himself as a representative of Verizon . . . told [her] . . . that Verizon was offering a promotional 'bundled' package deal," that "[a]s a result of John

7

Doe #1's representations, [she] was interested in purchasing the Verizon Triple Play bundle," and that "John Doe #1 did not advise [her] that the satellite cable television services from D[IREC]TV would be provided to her business under a residential account." (Compl. ¶¶ 21, 23, 24.) Based on the allegations in the Complaint, the Court cannot accept Plaintiff's argument that "Verizon's role in the dispute is as seller of D[IREC]TV satellite television services." (Pl.'s Second Opp'n Br. 3.) John Doe #1 sold Plaintiff the "Verizon Triple Play" bundle, which included telephone and Internet services from Verizon and satellite cable television services from DIRECTV. (Compl. ¶ 21.) Therefore, insofar as Plaintiff is asserting claims against Verizon stemming from John Doe #1's acts or omissions during the sale of the "Verizon Triple Play" bundle, these claims are subject to the Verizon Internet Terms of Service agreement.[1]

### C. The Lonstein Defendants' Intertwinement Theory

The Lonstein Defendants were not a party to the arbitration agreement between Plaintiff and DIRECTV, but argue that Plaintiff's claims against them are also subject to arbitration because they "are so intertwined with those of DIRECTV [that] Plaintiff is equitably estopped from litigating against the Lonstein Defendants separately." (Lonstein Defs.' Moving Br. 1, ECF No. 15-1.) In opposition, Plaintiff argues that she cannot be compelled to arbitrate her claims against the Lonstein Defendants because the New Jersey Supreme Court has rejected the "intertwinement" theory. (Pl.'s First Opp'n Br. 16-18 (citing *Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174 (2013)

---

[1] Plaintiff additionally argues that, if the Verizon agreement does apply, it materially conflicts with the DIRECTV arbitration provision, rendering both unenforceable. (Pl.'s Second Opp'n Br. 4.) In support, Plaintiff cites *NAACP of Camden County East v. Foulke Management Corp.*, 421 N.J. Super. 404 (App. Div. 2011) and *Rockel v. Cherry Hill Dodge*, 368 N.J. Super. 577 (App. Div. 2004), two cases involving conflicting arbitration agreements between the respective plaintiffs and one party. (Pl.'s Second Opp'n Br. 4-5.) Here, in contrast, Plaintiff entered into separate arbitration agreements with both DIRECTV and Verizon, and any differences between the two arbitration provisions do not render both unenforceable.

8

(holding that reliance on a theory of intertwinement, by itself, is insufficient to compel arbitration in the case of a non-signatory, and that the doctrine of equitable estoppel does not apply absent proof of detrimental reliance).)

"Because arbitration is a creature of contract law, when asked to enforce an arbitration agreement against a non-signatory to an arbitration clause, [courts] ask 'whether he or she is bound by that agreement under traditional principles of contract and agency law.'" *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 194-95 (3d Cir. 2001) (quoting *Bel-Ray Co., Inc. v. Chemrite LTD*, 181 F.3d 435, 444 (3d Cir. 1999)). Where there is no agreement to arbitrate, the Court has no authority to compel parties into arbitration. *Sicily by Car S.p.A. v. Hertz Global Holdings, Inc.*, No. 14-6113, 2015 WL 2403129, at *3 (D.N.J. May 20, 2015) (quoting *Bel-Ray Co., Inc.*, 181 F.3d at 444). "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Par-Knit Mills, Inc.*, 636 F.2d at 54. The Third Circuit has found two situations where equitable estoppel may bind non-signatories to an arbitration clause. *E.I. DuPont*, 269 F.3d at 199.

> First, courts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement. Second, courts have bound a signatory to arbitrate with a non-signatory at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.

*Id.* Whether it is appropriate to compel non-signatories to arbitrate is a fact-specific inquiry that will turn on the unique circumstances of each case. *Precision Funding Grp., LLC v. Nat'l Fid. Mortg.*, No. 12-5054, 2013 WL 2404151, at *5 (D.N.J. May 31, 2013). The New Jersey Supreme

court has rejected the intertwinement theory as sufficient to compel arbitration, *Hirsch*, 215 N.J. at 192-93, and the courts in this District are split on the issue. *Compare Deering v. Graham*, No. 14-3435, 2015 WL 424534, at *7 (D.N.J. Jan. 30, 2015) (compelling arbitration between non-signatories because of the "inextricable connection between plaintiff's . . . claims and the signatories and nonsignatories to her agreements"), *with Sicily by Car*, 2015 WL 2403129, at *5 (requiring non-signatory defendant to establish detrimental reliance in order to compel arbitration).

Here, under the second theory, the Lonstein Defendants argue that Plaintiff must arbitrate her claims against them because of: (1) the Lonstein Defendants' close relationship to DIRECTV; and (2) the interconnectedness between Plaintiff's claims against the Lonstein Defendants and DIRECTV. (Lonstein Defs.' Moving Br. 5-6.) While there is a connection between Plaintiff's claims against the Lonstein Defendants and her claims against DIRECTV, the claims also differ in that Plaintiff bases her claims against the Lonstein Defendants on the correspondence she received from them, which threatened legal action, and bases her claims against DIRECTV on their representations and conduct during the course of Plaintiff's time as a DIRECTV customer. (*See* Compl. ¶¶ 21-27, 33-38.) Further, the Court finds the *Hirsch* and *Sicily by Car* line of cases, which require detrimental reliance to compel non-signatories to arbitrate, persuasive. *Hirsch*, 215 N.J. at 192-93; *Sicily by Car*, 2015 WL 2403129, at *5. As the Lonstein Defendants have not asserted that they detrimentally relied on the arbitration agreement between DIRECTV and Plaintiff, the Court does not find it appropriate to compel Plaintiff to arbitrate her claims against the Lonstein Defendants.[2]

---

[2] For the first time in their reply brief, the Lonstein Defendants also argue that Plaintiff must arbitrate her claims against them based on agency principles. However, the Court will not consider new issues raised in a reply brief that should have been raised in the initial brief. *See Campbell v. John*, No. 12-2750, 2016 WL 2347038, at *3 (D.N.J. May 4, 2016) (quoting *D'Alessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007)).

**D.     Scope of the Arbitration Agreement**

Upon finding that a valid agreement to arbitrate exists between Plaintiff and Defendants DIRECTV and Verizon, the second inquiry requires the Court to determine whether the particular dispute falls within the scope of the arbitration agreements. *See Trippe*, 401 F.3d at 532. With respect to the agreement to arbitrate between Plaintiff and DIRECTV, Plaintiff argues that her claims are not subject to arbitration because there is a provision in the DIRECTV Customer Agreement that excludes from arbitration "any dispute involving a violation of the Communications Act of 1934, 47 U.S.C. § 605." (Pl.'s First Opp'n Br. 3-4 (emphasis omitted).) The August 17 correspondence sent to Plaintiff by Lonstein Law stated that Plaintiff was in violation of the Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605, as a result of the inappropriate use of the residential account for business purposes. (August 17th Letter 1.)

The Court agrees with DIRECTV that Plaintiff mischaracterizes her claims by arguing that they fall under the arbitration exclusion. Plaintiff's claims center around an alleged "scheme and course of conduct in which the owners of small businesses . . . (often minorities . . . ) are the focus of unsolicited sales campaigns to sell satellite cable television services" and then "send legal correspondence to the business owners which allege that they have 'pirated' or stolen [the] services." (Compl. ¶¶ 2, 6.) Plaintiff alleges violations of the New Jersey Consumer Fraud Act, the New Jersey Cable Television Act, and the New Jersey Racketeer Influenced and Corrupt Organizations Act, along with common law fraud. (*Id.* ¶ 8, 73.) The Communications Act is not mentioned anywhere within the Complaint, nor can its alleged relevance be inferred from any facts stated in the Complaint. Therefore, the Court finds that these claims are not excluded from arbitration.

11

The Court further finds that this dispute falls within the scope of both the DIRECTV and Verizon arbitration provisions. The DIRECTV arbitration provision broadly encompasses "any legal or equitable claim relating to this Agreement, any addendum, or [the customer's] Service." (Decl. of Ivy S. Rankin ("Rankin Decl."), Ex 6 ¶ 9, ECF No. 17-2.) Here, Plaintiff's claims involve how her account was classified, and therefore fall within the scope of the DIRECTV arbitration agreement. Similarly, Verizon's amended agreement states that "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS." (Opie Decl. ¶ 6.) Plaintiff asserts claims against Verizon based on Verizon representative John Doe #1's solicitation of Plaintiff to purchase the "Verizon Triple Play" bundle and John Doe #2 and #3's installation of the services. (Compl. ¶¶ 21-28.) The claims therefore involve equipment, products, services, and advertising from Verizon, and are within the scope of the Verizon arbitration provision.

### IV. Conclusion

For the reasons set forth above, and for other good cause shown, Defendants DIRECTV and Verizon's motions to stay and compel arbitration are granted, and the Lonstein Defendants' motion to compel arbitration is denied. The case will be stayed as to all Defendants pending arbitration. An order consistent with this Memorandum Opinion will be entered.

s/Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** August 30, 2016