UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA JOAQUIN, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>LONSTEIN LAW OFFICES, P.C., a New York Professional Corporation; JULIE COHEN LONSTEIN; WAYNE LONSTEIN, SIGNAL AUDITING, INC., and STEVEN LEVINE,<br><br>    Defendants. | Civil Action<br><br>No. 3:15-cv-08194-MAS-DEA |

BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Henry P. Wolfe, N.J. ID 031942005
The Wolf Law Firm, LLC
1520 U.S. Hwy 130, Suite 101
North Brunswick, NJ  08902
(732) 545-7900
hwolfe@wolflawfirm.net

Attorneys for Plaintiff and the Putative Class

## TABLE OF CONTENTS

SUMMARY OF THE CLAIM FOR WHICH PLAINTIFF SEEKS CLASS CERTIFICATION ..................................................................................................1

DISCOVERY SUPPORTING CLASS CERTIFICATION ......................................3

LEGAL ARGUMENT ..............................................................................................5

   I.   CLASS CERTIFICATION UNDER RULE 23 ..............................................5

   II.  THE PROPOSED CLASS SATISFIES RULE 23(A)'S REQUIREMENTS..6
      A.  Numerosity - Rule 23(a)(1).........................................................................6
      B.  Commonality - Rule 23(a)(2).....................................................................7
      C.  Typicality - Rule 23(a)(3) ...........................................................................8
      D.  Plaintiff and Counsel Will Adequately Represent the Class ....................10
      E.  Ascertainability ........................................................................................12

   III. THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(B)(3) ......13
      A.  Predominance ...........................................................................................13
      B.  Superiority ................................................................................................14

CONCLUSION .......................................................................................................16

## SUMMARY OF THE CLAIM FOR WHICH PLAINTIFF SEEKS CLASS CERTIFICATION

This motion seeks class certification with respect to Count Two of the Second Amended Complaint, which asserts claims for treble damages and equitable relief under the New Jersey Racketeer Influenced and Corrupt Organizations Act ("NJRICO"), N.J.S.A. 2C:41-1, *et seq.*  The claim alleges that the Defendants engaged in a pattern of racketeering activity by engaging in a "scheme to improperly threaten Plaintiff and others similarly situated with prosecution and/or litigation for purportedly unauthorized use of satellite cable television services from DirecTV, and thereby receive money, including but not limited to, indebtedness, settlement payments, civil judgments and/or attorney's fees and costs."  2nd Am. Compl., ¶78.

More specifically, the Plaintiff alleges that the Defendants attempted to extort money from the Plaintiff (a sole proprietor of a small beauty salon in downtown New Brunswick, New Jersey) and other small business owners by accusing them of "unauthorized" use of DirecTV "non-commercial" subscriptions at their places of business, even though the services and subscriptions were *authorized* and activated *at the places of business* by DirecTV agents at the time of installation, as reflected in DirecTV's records.  The pleadings allege that the Defendants knew or acted in reckless disregard of the fact that these subscriptions were authorized by DirecTV agents at the time of installation at the business locations, but that the Defendants decided to attempt to extort money from these small business owners anyway.  To

support this allegation, the Second Amended Complaint attaches and incorporates as an exhibit deposition testimony and other filings in a previous action, showing that Defendant Julie Lonstein had prior knowledge of a DirecTV agent authorizing an allegedly "unauthorized" non-commercial subscription at a business location (and even attempted to suppress evidence of this authorization, but misinforming the agent that the business owner was suing him in an ultimately unsuccessful attempt to tamper with the agents' testimony).

The proposed Class is therefore limited to New Jersey business owners whom the Defendants targeted with a demand letter accusing them of "unauthorized" use of a "non-commercial" subscription at a business location, but whose "non-commercial" subscriptions were, like the Plaintiff's, authorized and activated by a DirecTV agent at their business locations.   See 2nd Am. Compl., ¶49, Class Definition.  Specifically, the proposed class is defined as

> All owners of New Jersey businesses who, at any time on or after September 9, 2010, were sent correspondence by the Lonstein Defendants regarding allegedly unauthorized use by the business of residential or non-commercial DirecTV satellite television services, and whose DirecTV service was installed at the business location and authorized for a residential or non-commercial account.

2nd Am. Compl., ¶49.

As to damages, the Plaintiff asserts that the $10,000 that the Defendants unlawfully demanded from her constitutes an actionable unlawful debt under the NJRICO, even though she did not pay the extortion demand prior to filing suit.  See

-2-

*Desmond v. Siegel,* 2012 U.S. Dist. LEXIS 109579, at *29 (D.N.J. Aug. 6, 2012)(finding prima facie RICO predicate violations of the Hobbs Act and the New Jersey Theft by Extortion statute where the defendant sent letters accusing the plaintiff "copyright theft" and demanding payment); *Chevron Corp. v. Donziger*, 833 F.3d 74, 135 (2d Cir. 2016)(Holding that "imposition of wrongful debt" constituted sufficient damage to confer standing under RICO, notwithstanding that the plaintiff did not pay or intend to pay it).

## DISCOVERY SUPPORTING CLASS CERTIFICATION

In response to an interrogatory asking for the identity of all persons who meet the "purported class" definition, the Lonstein Defendants declined to provide information about the entire proposed class based on various objections. Wolfe Decl., Exh. A, Lonstien Defendants' Response to Interrogatory #2. However, they did agree to provide a "redacted list" of a subset of the proposed class, consisting of business owners, who, like the Plaintiff, did not make any payments in response to demand letters, responding to Interrogatory #2 as follows:

> Subject to and without waiving the foregoing objections, Lonstein Defendants will produce a redacted list of individuals and businesses similarly situated to Plaintiff in that they received a letter from the Lonstein Law Offices outlining their unauthorized use of cable programming and did not pay any amounts in resolution, remuneration, or settlement.

*Id.* The Lonstein Defendants produced the "redacted list" referred to in response to Interrogatory #2 as part of their document production, bates stamped as Lonstein-000004 – 000012. Wolfe Decl, Exh. B. The "redacted list" consists of 245 numbered rows, each presumably listing the "individuals and businesses similarly situated to Plaintiff in that they received a letter from the Lonstein Law Offices outlining their unauthorized use of cable programming and did not pay any amounts in resolution, remuneration, or settlement." *Id.* However, the Lonstein Defendants completely redacted *all* information other than the number of each row. *Id.*

Nevertheless, the information supplied by the Lonstein Defendants confirms that there are 245 people, who the Defendants concede are "similarly situated" to the Plaintiff, and whose claims for damages under the NJRICO are necessarily based on the same legal theory as the Plaintiff's. Therefore, the Plaintiff now moves for certification of a class, as defined in the Second Amended Complaint, but *narrowed*[1] to conform with discovery, as follows:

> All owners of New Jersey businesses who, at any time on or after September 9, 2010, were sent correspondence by the Lonstein

---

[1] In this Circuit and others, a party moving for class certification is not strictly confined to the class definition proposed in the complaint, but may generally seek certification of a more *narrowly* defined class. See *Weisfeld v. Sun Chem. Corp.*, 84 Fed. Appx. 257, 259 (3d Cir. 2004) (Affirming the district court's consideration of the plaintiff's narrowed class definition, noting that the Court "is not bound by the class definition proposed in the complaint")(citing *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)).

> Defendants regarding allegedly unauthorized use by the business of residential or non-commercial DirecTV satellite television services, and whose DirecTV service was installed at the business location and authorized for a residential or non-commercial account, ***and who did not pay any amounts in resolution, remuneration, or settlement.***

## LEGAL ARGUMENT

### I. CLASS CERTIFICATION UNDER RULE 23

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores v. Dukes*, 131 S.Ct. 2541, 2550 (2011)(*quoting Califano v. Yamasaki*, 99 S.Ct. 2545 (1979)). In federal court, class actions are governed by *Federal Rule of Civil Procedure* 23. Sub-section (a) of *Rule* 23 provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In the Third Circuit, courts have recognized an additional class certification prerequisite, which is that the class must be readily "ascertainable" based on objective criteria. Once the party seeking class certification has satisfied the prerequisites of *Rule* 23(a) and ascertainability, the party must demonstrate that at least one of the three requirements set forth at *Rule* 23(b) has also been met. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 165 (3d Cir. 2015).

## II. THE PROPOSED CLASS SATISFIES *RULE* 23(A)'S REQUIREMENTS

### A. Numerosity - *Rule* 23(a)(1)

To qualify for certification under *Rule* 23 (a)(1), a proposed class must be "so numerous that joinder of all members is impracticable." The "[p]recise enumeration of the members of a class is not necessary for the action to proceed as a class action." *Zinberg v. Wash. Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990)(*citing* Wright, Miller & Kane, *Federal Practice and Procedure, Civil 2d*, section 1762 (1982)). "It is permissible to estimate class size." *Id.* (*citing In re ORFA Securities Litig.*, 654 F.Supp 1449 (D.N.J. 1987)).

Moreover, "[t]here is no minimum number of members needed for a suit to proceed as a class action." *Marcus*, *supra*, at 595 (*citing Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)). Generally, "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of *Rule* 23(a) has been met." *Id.* In assessing numerosity, the court "can make a common sense determination whether it would be difficult or inconvenient to join all class members as named parties under the particular circumstances of a case." *Maldonado v. Houstoun*, 177 F.R.D. 311, 319 (E.D. Pa. 1997).

In *Barkouras v. Hecker*, 2006 U.S. Dist. LEXIS 88998, *3-4 (D.N.J. Dec. 8, 2006), the court held that the defendants essentially conceded numerosity when they admitted to sending collection demands to approximately 15,000 New Jersey debtors

that were similar or identical to the demand sent to the plaintiff.

Here, the evidence shows that numerosity is easily met for the proposed class. In its discovery responses, Defendants have identified 245 individuals who meet the proposed class definition. Wolfe Decl,, Exh. A and B. Therefore, under the foregoing standards, the Plaintiff has satisfied the numerosity requirement

### B.  Commonality - *Rule* 23(a)(2)

Commonality requires a party seeking class certification to demonstrate that "there are questions of law or fact common to the class." *Rule* 23(a)(2). The commonality requirement, however, "does not require identical claims or facts among class member[s]." *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004), *abrog. on other grounds by Hydrogen Peroxide*, at 318 n.18. Nor is it necessary "that all questions of fact or law raised be common." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 75 (D.N.J. 1993) (*citations omitted*)). "[F]or purposes of *Rule* 23(a)(2), '[e]ven a single [common] question' will do." *Wal-Mart*, *supra*, at 2556 (*quotation omitted*); *see also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). "What matters to class certification. . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, *supra*, at 2551. Put simply, a proposed class action meets the requirement of commonality when it contains even a single shared

contention for which "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart*, at 2551 (*quoting Nagareda,* Class Certification in the Age of Aggregate Proof, 84 N. Y. U. L. Rev. 97, 132 (2009).

In the instant matter, there are not one, but multiple, questions of fact and law which are common to the class. These include whether the Defendants' alleged conduct constituted a predicate unlawful act (such as fraud, extortion, or mail fraud) to support the putative class members' NJ RICO claim, whether the Defendants have engaged in a pattern of racketeering activity to support the NJ RICO claims, and whether the putative class members suffered sufficient harm through "imposition of unlawful debt" to support their NJ RICO claims. Regardless of the ultimate determination on the merits of these issues, there is no doubt that they are common to the Plaintiff and all putative class members. Moroever, these questions can be resolved by a single judicial determination as to as to all class members, and therefore the commonality requirement of *Rule* 23 is satisfied.

### C.   Typicality - *Rule* 23(a)(3)

*Rule* 23(a)(3) requires that the claims or defenses of the class representative be "typical of the claims or defenses of the class." *Rule* 23(a)(3). The "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own

goals." *In re Prudential*, 148 F.3d 283, 311 (3d Cir. 1998) (*citations omitted*). Thus, "[t]o evaluate typicality, we ask 'whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006)( *quoting Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)). Rule 23(a)(3) is satisfied where a named plaintiff can "show that the issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as to those of unnamed class members." *Weiss v. York Hosp.*, 745 F.2d 786, 809 n.36 (3d Cir. 1984) (*citation omitted*). Thus, "factual variations will not defeat certification where the various claims arise from the same legal theory," unless there is a danger with respect to the named plaintiff that "the unique circumstances or legal theory will receive inordinate emphasis" so that the common claims "will not be pressed with equal vigor or will go unrepresented." *Id.* See also *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) ("By mailing the form letters seeking the $12.50 collection fee, the Wexlers engaged in the same course of conduct towards Keele and the members of [the] classes…. We are confident that Keele has met Rule 23's typicality requirement.").

In this matter, the Plaintiff's claims arise from the same course of conduct that gives rise to the claims of the Class: the attempt by the Defendants to extract money from the Plaintiff and the putative class members, by sending demand letters

-9-

accusing them of having been caught stealing "unauthorized" DirecTV services, and threatening financially crushing litigation if they do not pay up. The Plaintiff's claims are made even more "typical" by narrowing of the proposed class definition, which assures that the Plaintiff and the putative class members will share the same legal theory of damages, thus further aligning their interests in advocating that theory. In short, the factual bases, theory of liability, and theory of damages are the same for the Plaintiff as they are for all of the other members of the proposed class.

### D. Plaintiff and Counsel Will Adequately Represent the Class

*Rule* 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." *Rule* 23(a)(4). Adequate class representation depends on two factors: "(1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests antagonistic to those of the class." *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 519 (D.N.J. 1997). In determining the adequacy of class representation under *Rule* 23(a)(4), "[t]he burden is on the defendant to demonstrate that the representation will be inadequate." *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

Here, Ms. Nepomuceno is an adequate representative for the class because she does not have antagonistic interests inasmuch as her claims for relief are predicated

upon the same legal and factual allegations. *See*, *e.g.*, *Weissman*, *supra*, at *9-10 (finding adequacy in FDCPA collection letter case where "Plaintiff's claims are identical to those of the class"). The Defendants have taken discovery, including Ms. Joaquin's depositing, and have uncovered no apparent conflicts of interest between her and the class members outside of this litigation. Therefore, she is fully capable of fairly and adequately representing the interests of the class under *Rule* 23(a)(4), as construed by the foregoing precedents.

Likewise, Ms. Joaquin's attorneys are highly experienced in consumer class actions and other complex litigation, and thus are able to effectively prosecute the claims asserted on behalf of the class. The attorneys at The Wolf Law Firm are highly experienced and have concentrated their practices in the area of consumer protection litigation, including class actions and other complex litigation. Wolfe Decl, ¶7, Exh. C (firm resume). Andrew R. Wolf and other attorneys from The Wolf Law Firm have been certified as Class Counsel in well over 100 consumer class actions. *Wolfe Decl.,* ¶¶ 4 – 8. The Wolf Law Firm also has the ability and resources to conduct this litigation and represent the interests of the proposed Class. *Id.* These resources include multiple attorneys who devote their practice to class action litigation and consumer law, sufficient support staff experienced at communicating with class members, multiple telephone lines for handling communications or questions from class members, and a record of well over one hundred successfully

completed class actions. *Id.*

### E. Ascertainability

Although it is not among *Rule* 23(a)'s expressly enumerated requirements, the Third Circuit, this Court and others have held that "an essential prerequisite of a class action, at least with respect to actions under *Rule* 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

However, the inquiry into ascertainability is "narrow" and "only requires the plaintiff to show that class members can be identified." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 165 (3d Cir. 2015)(*citing Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013). Two elements must be met to satisfy the requirement of ascertainability: First, the class must be defined with reference to objective criteria. Second, there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. *Byrd*, at 163.

Here, membership in the Class is readily ascertainable because they are defined by objective criteria. In fact, the Defendants have already identified and "ascertained" the class members, and have even produced a list of them, albeit entirely redacted (a circumstance that can be readily addressed with a Court order requiring the Defendants to turn over an unreacted list for the purposes of identifying

the class members and providing class notice). Thus, the second element of ascertainability is also easily met

### III. THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(3)

Under *Rule* 23, once the threshold requirements of subsection (a) have been satisfied, the party seeking class certification must then demonstrate that the requirements of *subsections* (b)(1),(2), or (3) are satisfied. Plaintiff is seeking certification of the Class under *Rule* 23(b)(3), which requires a party show that "(i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." *Marcus*, *supra*, at 591; *Rule* 23(b)(3).

#### A. Predominance

The predominance requirement for class actions under *Rule* 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. . . Issues common to the class must predominate" over any questions affecting only individual members." *In re Hydrogen Peroxide Antitrust Litig.*, *supra*, at 310-11 (*citations omitted*). However, the mere "presence of individual questions … does not mean that the common questions of law and fact do not predominate[.]" *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985). Instead, the reviewing court should look to whether "the efficiencies gained by class resolution of the common issues [will be] outweighed by individual issues presented for adjudication." *In re*

*Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 511 (D.N.J. 1997). The "focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011).

With respect to the proposed class here, common issues clearly predominate. As discussed earlier, the proposed Class consists of consumers to whom Defendants sent demand letters accusing them of having been caught stealing "unauthorized" DirecTV services simply by virtue of displaying them at their places of business, even though they all (by definition) had their service installed, activated, and thus "authorized" by a DirecTV agent *at the place of business.* All were threatened with costly lawsuits if they did not pay the amount demanded. All have refused or failed to pay the unlawful debt, and are, according to the Defendants themselves, "similarly situated" to the Plaintiff. Wolfe Decl., Exh. A. The factual and legal bases for their claims are nearly identical, and to the extent that they may vary slightly, common questions still plainly predominate over individual ones with respect to resolution of their claims.

### B.   Superiority

*Rule* 23(b)(3)'s superiority requirement asks the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative

available methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3d Cir. 2004) (*citation omitted*). In determining superiority, a court may consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the likely difficulties in managing a class action. *Rule* 23(b)(3).

As to the first and second factors, Plaintiff's counsel knows of no other class member that has brought NJ RICO claims against the Defendants, and it is likely that few if any of these small business owners would have the legal knowledge to recognize that they may have such a claim in the absence of class certification and notice, or that they could afford to hire an attorney to undertake such a case if they did. See *Varacallo v. Mass. Mut. Life Ins. Co*., 226 F.R.D 207, 233 (D.N.J. 2005) (superiority requirement met where it was "unlikely that individual [c]lass [m]embers would have the resources to pursue successful litigation on their own"). As to the third factor, it is clearly desirable to concentrate this litigation in a court located in New Jersey, as it involves New Jersey small business owners bringing claims solely under a New Jersey statute. As to the fourth factor, consolidating the claims of the 245 class members will promote efficiency, without raising any serious manageability issues, given the similarity of all class members' claims.

## CONCLUSION

For all of the reasons set forth herein, Plaintiff's Motion for Class Certification should be granted.

Respectfully submitted,

THE WOLF LAW FIRM, LLC

Dated: July 17, 2018

s/ Henry P. Wolfe
Henry P. Wolfe