**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA JOAQUIN, <br><br> Plaintiff, <br><br> v. <br><br> DIRECTV GROUP HOLDINGS, INC., *et al.*, <br><br> Defendants. | Civil Action No. 15-8194 (MAS) (DEA) <br><br> **MEMORANDUM OPINION** |

### SHIPP, District Judge

This matter comes before the Court upon Plaintiff Angela Joaquin's ("Plaintiff") Motion to Certify Class (ECF No. 193);[1] Defendants Lonstein Law Offices, P.C., Julie Cohen Lonstein, and Wayne D. Lonstein's (collectively, "Lonstein Defendants") Motion for Summary Judgment (ECF No. 168); and Defendants Signal Auditing, Inc., and Steven Levine's (collectively, "Signal Defendants") Motion for Summary Judgment (ECF No. 175). Lonstein Defendants and Signal Defendants (collectively, "Defendants") opposed Plaintiff's Motion (ECF Nos. 171, 174), and Plaintiff replied (ECF No. 181). Plaintiff opposed Defendants' Motions for Summary Judgment

---

[1] Plaintiff's Motion to Certify Class was originally filed on August 5, 2019. (ECF No. 165.) On September 6, 2019, Defendants filed their motions for summary judgment. (ECF Nos. 168, 175.) The Court found good cause to consider all three motions on the same schedule "because considerable issues of law and fact are common to the motions." (Mar. 6, 2020 Order, ECF No. 192.) The Court, accordingly, deemed Plaintiff's Motion filed on September 6, 2019. (*Id.*) Plaintiff's Motion is now listed on the docket at "ECF No. 193." Unless otherwise noted, hereinafter, the Court references this motion with its original docket number, ECF No. 165.

(ECF No. 180), and Defendants replied (ECF Nos. 182, 185).[2] For the reasons set forth herein, the Court denies without prejudice Plaintiff's Motion to Certify Class, permits Plaintiff a final opportunity to refile a motion for class certification, and finds good cause to defer consideration of Defendants' Motions for Summary Judgment until after Plaintiff files a new motion.

## I. BACKGROUND[3]

### A. Factual History

DirecTV[4] offers telephone, internet, and television services to businesses that offer services to a large number of public invitees, including restaurants and bars, under a "relatively expensive commercial license." (Second Am. Compl. ("SAC") ¶ 14, ECF No. 59.) Plaintiff alleges that Lonstein Defendants have a contract with DirecTV and other service providers "to identify and seek monetary and other remedies against persons who pirate [the providers'] video signals." (*Id.* ¶ 8.) Lonstein Defendants utilized Signal Defendants to assist them with this practice. (*Id.* ¶ 9.) Defendants "receive a large percentage of [the] money collected from purported pirates as a fee." (*Id.* ¶ 12.)

DirecTV would provide Defendants with "lists of business establishments with DirecTV service subscriptions designated as 'commercial' subscriptions." (*Id.* ¶ 15.) Defendants hire individuals to "identify[] and photograph[] any business displaying DirecTV" that are not on the

---

[2] In a series of filings, Signal Defendants responded to Plaintiff's supplemental statement of disputed facts, objected to Plaintiff's responses to Signal Defendants' statement of undisputed facts, and objected to various exhibits and declarations Plaintiff filed in connection with the instant motions. (*See* ECF Nos. 186–89.)

[3] The factual and procedural history of this matter are well known to the parties. The Court, accordingly, only recounts those facts necessary to resolve the instant motions.

[4] Plaintiff voluntarily dismissed DirecTV, LLC from this matter on September 1, 2016. (ECF No. 41.)

2

list of those with commercial subscriptions. (*Id.* ¶ 16.) Plaintiff alleges that once a potential violator is identified, Defendants, without further investigation, would disconnect the business's DirecTV service and send letters "accusing the business and/or its owner of . . . unauthorized reception of DirecTV's signal for commercial use, threatening lawsuits and/or prosecution, and . . . demand[ing] large monetary settlements." (*Id.* ¶¶ 17–19.)

Plaintiff "is the owner of Joaquin LLC, which does business as 'Angela's Salon and Supplies.'" (*Id.* ¶ 26.) In or around October 2010, Plaintiff was sold a "Verizon Triple Play" bundle that included "telephone, [i]nternet[,] and satellite cable television services from DirecTV."[5] (*Id.* ¶ 27.) An individual who identified himself as a representative of DirecTV installed and activated the service at Plaintiff's business. (*Id.* ¶ 30.) Plaintiff was never informed by the representative that the "services from DirecTV would be provided to her business under a [non-commercial] residential account" and never signed a contract to that effect. (*Id.* ¶¶ 31–33.) After approximately four years of using the service, Plaintiff switched service providers "from Verizon to another carrier because her business required a faster [i]nternet connection." (*Id.* ¶ 37.) Plaintiff contacted DirecTV by telephone and informed the representative that "she wanted to receive the same . . . services from DirecTV so that her customers would continue to have something to watch on television while they were in [her] beauty salon." (*Id.* ¶ 38.) Once again, Plaintiff was not informed that her existing services had been provided under a residential account nor that her future services would continue to be provided in a similar manner. (*Id.* ¶ 40.)

On or about August 6, 2015, Plaintiff received correspondence (the "August 6 Letter") from Lonstein Defendants, on Lonstein Law Office, P.C. letterhead, advising her, *inter alia*, that

---

[5] Plaintiff voluntarily dismissed Verizon Communications, Inc. from this matter on September 1, 2016. (ECF No. 41.)

3

Lonstein Defendants had been retained by DirecTV "regarding the unauthorized reception and commercial display of DirecTV programming at [Plaintiff's] establishment in violation of the Federal Communications Act and DirecTV customer agreements." (*Id.* ¶ 41) (internal quotation marks omitted). The August 6 Letter advised Plaintiff that an independent contractor, an employee of Signal Defendants, had observed and documented "the exhibition of DirecTV programming" without authorization within Plaintiff's salon. (*Id.* ¶¶ 41, 42.) The August 6 Letter further "threatened prosecution and/or litigation" if Plaintiff failed to respond within seven days. (*Id.* ¶ 41.) On or about August 17, 2015, Plaintiff received another letter from Lonstein Defendants that repeated the same allegations and similarly "threatened prosecution and/or litigation" if Plaintiff failed to: (1) pay $10,000.00 or, alternatively, (2) "pay $7,500.00 and become a business subscriber of DirecTV." (*Id.* ¶ 44.)

### B. Procedural History

On October 31, 2016, Plaintiff filed a two-count Second Amended Complaint ("SAC") against Defendants, alleging violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq.* and of the New Jersey Racketeer Influenced and Corrupt Organizations Act ("NJRICO"), N.J. Stat. Ann. §§ 2C:41-1, *et seq.* (SAC ¶¶ 62–85.) As to her NJRICO claim, Plaintiff alleges that Defendants "engaged in a pattern of racketeering activity" by engaging in a "scheme to improperly threaten Plaintiff and others similarly situated with prosecution and/or litigation for purportedly unauthorized use of satellite cable television services from DirecTV" even though the residential DirecTV services used by Plaintiff and others had been installed in their place of business by a DirecTV representative and had been authorized for use therein. (*Id.* ¶¶ 43, 78.) Plaintiff contends Defendants' scheme was a "fraudulent practice, extortion, and/or mail fraud . . . and is[,] therefore[,] 'racketeering activity.'" (*Id.* ¶ 78.) On June

27, 2017, the Court dismissed Plaintiff's NJCFA claim, leaving Plaintiff's NJRICO claim. (ECF

No. 80.) Discovery and motion practice ensued.

On July 17, 2018, Plaintiff moved to certify a class pursuant to Federal Rule of Civil Procedure 23. (ECF No. 101.) Plaintiff proposed the following class definition (the "Amended Class Definition"):

> All owners of New Jersey businesses who, at any time on or after September 9, 2010, were sent correspondence by . . . Lonstein Defendants regarding allegedly unauthorized use by the business of residential or non-commercial DirecTV satellite television services, and whose DirecTV service was installed at the business location and authorized for a residential or non-commercial account, *and who did not pay any amounts in resolution, remuneration, or settlement.*[6]

(Pl.'s First Class Moving Br. 4–5, ECF No. 101-1). Plaintiff's Amended Class Definition was based on a list Lonstein Defendants produced in response to Plaintiff's Interrogatory No. 2. (*Id.* at 3–4.)

Interrogatory No. 2 asked Defendants to "identify each person who meets the definition of the proposed [class] as set forth at ¶ [49] of the [SAC], indicating the total number of such persons."[7] (July 17, 2018 Decl. of Henry Wolfe *5,[8] Ex. A to Pl.'s First Class Moving Br., ECF No. 101-2.) In response to Interrogatory No. 2, Lonstein Defendants agreed to "produce a redacted

---

[6] Plaintiff added the italicized text to the SAC's proposed class definition. (*Compare* SAC ¶ 49 *with* Pl.'s First Class Moving Br. 4–5.) Plaintiff argued that "a party moving for class certification is not strictly confined to the class definition proposed in the complaint, but may generally seek certification of a more narrowly defined class." (Pl.'s First Class Moving Br. 4 n.1 (citing *Weisfeld v. Sun Chem. Corp.*, 84 F. App'x 257, 259 (3d Cir. 2004).) Plaintiff, accordingly, sought certification of this more narrowly defined class. (*Id.* at 4–5.)

[7] The interrogatory incorrectly references paragraph 40 of the SAC; Plaintiff's class definition is stated in paragraph 49. (*See* SAC ¶ 49.)

[8] Pages preceded with an asterisk refer to the page number on the ECF header.

5

list of individuals and businesses similarly situated to Plaintiff in that they received a letter from the Lonstein Law Offices outlining their unauthorized use of *cable programming* and did not pay any amounts in resolution, remuneration, or settlement." (*Id.* at *5–6 (emphasis added).) Lonstein Defendants subsequently produced a document appearing to contain 245 rows of entries, completely redacted except for the column headers and the numbers identifying the rows (the "Redacted List"). (*Id.* at *21–28, Ex. B to Pl.'s First Class Moving Br., ECF No. 101-2.)

Plaintiff argued that the proposed class list (the "Proposed Class List") was solely based on the Redacted List. (*See, e.g.*, Pl.'s First Class Moving Br. 3–4.) Plaintiff also asserted that Lonstein Defendants' response to Interrogatory No. 2 supported her view that the Proposed Class List fits the Amended Class Definition. (*Id.* at 4.) Signal Defendants objected to Plaintiff's use of the Redacted List in support of her motion and argued that Plaintiff misconstrued the record and that there are material differences between the Proposed Class List and the Amended Class Definition. (Signal Defs.' First Opp'n Br. 5–7, ECF No. 112.) On reply, Plaintiff argued that, "because the list was produced in response to an interrogatory calling for a list of people who meet the class definition, it may be inferred that that is what the list contains . . . ." (Pl.'s First Class Reply Br. 3, ECF No. 121) (emphasis omitted). Plaintiff alternatively sought to compel the production of a list responsive to Interrogatory No. 2 from Lonstein Defendants or for an inference that the Redacted List contained "the redacted information of 245 people who meet the class definition *and* who also meet the Defendants' conception of being 'similarly situated.'" (*Id.* at 4) (emphasis in original). Lonstein Defendants objected to the grant of an inference and argued that discovery should not be reopened considering Plaintiff had ample opportunity to correct any deficiencies. (Lonstein Defs.' First Class Sur-Reply 2, ECF No. 128.) On August 21, 2018, Defendants moved for summary judgment. (ECF Nos. 105, 109.)

On January 31, 2019, the Court terminated the three motions and referred the matter to the Honorable Douglas E. Arpert, U.S.M.J., to adjudicate the various discovery disputes it identified therein. (Jan. 31, 2019 Letter Op. & Order, ECF No. 142.) The Court found that the record regarding the Proposed Class List was "unclear and appear[ed] muddled." (*Id.* at 3.) The Court also highlighted a number of concerns, including: (1) that "Lonstein Defendants agreed to produce a list that deviated from the interrogatory in obvious ways," including the relevant date limitation; (2) that Lonstein Defendants appeared to "limit the list to individuals or businesses who received letters related to cable programming" even though "the proposed class definition contained in the SAC explicitly references DirecTV's services"; and (3) the list Lonstein Defendants agreed to produce did not reconcile with Julie Cohen Lonstein's deposition testimony that "we don't bring any claims for misuse of cable . . . ." (*Id.*) (internal citations omitted).

During the supplemental discovery period, Lonstein Defendants clarified that the reference to "cable" was an error and that the Redacted List reflected individuals and businesses whom Lonstein Defendants had sent a letter regarding their use of DirecTV's satellite programming. (Pl.'s Class Moving Br. 5–6, ECF No. 165-1.)

In its January 31, 2019 Letter Opinion, the Court also found that the objections raised by Signal Defendants regarding discrepancies between the Proposed Class List and the Amended Class Definition "appear to be well-founded" and "the discrepancies between the Proposed Class List and the [Amended] Class Definition are obvious." (Jan. 31, 2019 Letter Op. & Order at 3.) The Court noted that, if such discrepancies existed, it appeared that Lonstein Defendants "created the discrepancies by narrowing the scope of their response to Interrogatory [No.] 2." (*Id.*) But Plaintiff also bore responsibility for the state of the current record. (*Id.* at 4.) Specifically, the Court stated:

> Plaintiff could have moved to compel Lonstein Defendants to answer Interrogatory #2. Plaintiff could also have identified the obvious and material discrepancies between the different pieces of discovery proffered by . . . Lonstein Defendants and brought a motion to compel and potentially for sanctions. Instead, Plaintiff allowed discovery to close with the record in its current state. Plaintiff's request for an inference or to compel . . . Lonstein Defendants to produce a list responsive to Interrogatory #2, therefore, appears belated.

(*Id.*)[9] The Court ultimately expressed no view as to the appropriate resolution of the discovery issues, temporarily terminated the pending motions, and referred the matter to Judge Arpert. (*Id.*)

On April 24, 2019, Judge Arpert ordered the reopening of discovery on a limited basis. (Judge Arpert's Apr. 24, 2019 Order, ECF No. 156.) Judge Arpert noted that "discovery was closed a year ago, and thus any further discovery ought to be limited." (*Id.* at 4.) Specifically, Judge Arpert held that "allowing Plaintiff to directly subpoena DirecTV, an entity that is not party to this litigation, would prejudice [the] Defendants by providing Plaintiff a second opportunity to accomplish what Plaintiff could have but failed to accomplish during discovery." (*Id.*) Judge Arpert permitted Plaintiff to "serve five interrogatories on Defendants closely related to the contours of Interrogatory No. 2 and the response to that Interrogatory by . . . Lonstein Defendants." (*Id.*)

On July 22, 2019, Judge Arpert entered an order sustaining Lonstein Defendants' objections to two of the supplemental interrogatories and closing discovery. (Judge Arpert's July 22, 2019 Order, ECF No. 161.) Judge Arpert further noted that the parties could now file the class certification and dispositive motions the Court had previously terminated. (*Id.* at *2.)

---

[9] Federal Rule of Civil Procedure 37(a) allows a party to move to compel disclosures and for sanctions for a party's intransigence during discovery. *See* Fed. R. Civ. P. 37.

8

On August 5, 2019, Plaintiff filed her instant Motion to Certify Class. (ECF No. 165.) On September 6, 2019, Defendants moved for summary judgment. (ECF Nos. 168, 175.)

## II. **LEGAL STANDARD**

### A. **Class Certification**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 348 (2011). "To invoke this exception, every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). A class may be certified pursuant to Rule 23(a) of the Federal Rules of Civil Procedure when:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four requirements are customarily referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *Dukes*, 564 U.S. at 349. In addition, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are known as "predominance" and "superiority," respectively. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008). Additionally, when certification is sought under Rule 23(b)(3), the Third Circuit has found that a prerequisite to an analysis of the

Rule 23(a) requirements is the determination of ascertainability of the proposed class. *See Marcus*, 687 F.3d at 592–93.

"[T]he requirements set out in Rule 23 are not mere pleading rules." *In re Hydrogen Peroxide*, 552 F.3d at 316. The burden is on the plaintiff "of establishing each element of Rule 23 by a preponderance of the evidence." *Marcus*, 687 F.3d at 591. This requires "actual" not "presumed" conformance with Rule 23's requirements. *Id.* "Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide*, 552 F.3d at 309 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

### B.   Summary Judgment

Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A material fact raises a "genuine" dispute if "a reasonable [fact finder] could [find] for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 250). To determine whether a genuine dispute of material fact exists, the Court must consider all facts and reasonable inferences in a light most favorable to the non-movant. *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249.

Although the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set

forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. The Court must grant summary judgment if the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001).

## III.   DISCUSSION

Plaintiff moves to certify the following proposed class:

> All owners of New Jersey businesses who, at any time on or after September 9, 2010, were sent correspondence by . . . Lonstein Defendants regarding allegedly unauthorized use by the business of residential or non-commercial DirecTV satellite television services, and whose DirecTV service was installed at the business location and authorized for a residential or non-commercial account, and who did not pay any amounts in resolution, remuneration, or settlement.[10]

(Pl.'s Class Moving Br. 4–5, ECF No. 165.) Plaintiff argues that the Redacted List "confirmed that there are 245 people, who [] Defendants concede[d] are 'similarly situated' to [] Plaintiff, and whose claims for damages under [] NJRICO necessarily arise from the same legal theory as Plaintiff's." (*Id.* at 4.) Plaintiff contends that the supplemental discovery period ameliorated the "discrepancy created by the incorrect reference to 'cable programming'" and that the Redacted List "has now been properly described as identifying those 245 New Jersey individuals and businesses constituting the class in that each received a letter from . . . Lonstein Defendants outlining the unauthorized use of 'DirecTV satellite programming.'" (*Id.* at 6.)

---

[10] This is the same proposed class Plaintiff sought to certify in her First Motion for Class Certification. (*Compare* ECF No. 101-1 *with* ECF No. 165-1.) As noted in I.B. *supra*, this proposed class is more narrowly tailored than the class proposed in the SAC.

11

Defendants advance a number of arguments in opposition. Defendants dedicate much of their briefing to the argument that Plaintiff's Motion should be denied because the Redacted List is the only evidence Plaintiff puts forth to support her theory of class certification and that the Redacted List does not contain the makeup of the Proposed Class List. (Lonstein Opp'n Br. 26, ECF No. 171; Signal Opp'n Br. 18–19, ECF No. 174.)

### A. Plaintiff Fails to Establish Numerosity

For class certification, a plaintiff must show by a preponderance of the evidence that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 484 (3d Cir. 2018). "Impracticable does not mean impossible, and refers rather to the difficulties of achieving joinder. This calls for an inherently fact-based analysis that requires a district court judge to take into account the context of the particular case, thereby providing district courts considerable discretion in making numerosity determinations." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016), *as amended* (Sept. 29, 2016) (internal quotation marks and citations omitted).

Although "no minimum number of plaintiffs is required to maintain a suit as a class action," the general rule is that a class of twenty or fewer is usually insufficiently numerous, a class greater than forty is usually sufficiently numerous, and a class between twenty-one and forty members may or "may not meet the numerosity requirement depending on the circumstances." *Id.* at 249–50 (citing *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)); 5 James Wm. Moore, et al., Moore's Federal Practice § 23.22; 5 William B. Rubenstein, Newberg on Class Actions § 3:12).

In determining whether the proposed class is sufficiently numerous, courts consider the following "non-exhaustive list" of factors: (1) judicial economy; (2) the proposed class members' ability and motivation to litigate as joined plaintiffs; (3) the class members' financial resources;

(4) the geographic dispersion of class members; (5) the ability to identify future claimants; and (6) whether the claims are for injunctive relief or damages. *Id.* at 253. Although all factors are relevant, the first two are of primary importance. *Id.*

Here, excluding citation to caselaw stating the legal standard for numerosity, Plaintiff argues that she has satisfied numerosity in four sentences. (*See* Pl.'s Class Moving Br. 8–9.)[11] Plaintiff argues that "the evidence shows that numerosity is easily met for the proposed class" because the Redacted List identifies "245 individuals who meet the proposed class definition." (*Id.* at 9.) Plaintiff relies on *Barkouras v. Hecker*, No. 06-366, 2006 WL 3544585, at *1 (D.N.J. Dec. 8, 2006), to support her assertion. (Pl.'s Class Moving Br. 8–9.)

The plaintiff in *Barkouras* brought an action for money damages alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). *Barkouras*, 2006 WL 3544585, at *1. The defendants in *Barkouras* admitted to "sending virtually identical form letters to thousands of people similarly situated to [the p]laintiff." *Id.* Plaintiff argues that the court in *Barkouras* "held that the defendants essentially conceded numerosity when they admitted to sending collection demands to approximately 15,000 New Jersey debtors that were similar or identical to the demand sent to the plaintiff." (Pl.'s Class Moving Br. 8–9.)

The Court, however, finds that Plaintiff's characterization of *Barkouras* is misleading. The *Barkouras* court did not find that the defendants "had *essentially* conceded numerosity," rather the court quoted the defendants' reply brief wherein the defendants themselves *explicitly* "concede[d] numerosity." *Id.* Here, Defendants clearly dispute Plaintiff's contention that numerosity is

---

[11] Plaintiff's argument in her Reply Brief is even more conclusory. (*See* Pl.'s Class Certification Reply Br., ECF No. 181 ("Numerosity is present. Defendants have produced a list of 245 class members which far exceeds the traditionally accepted minimum of forty members.").)

13

satisfied. (*See* Lonstein Opp'n Br. 26; Signal Opp'n Br. 18–19.) The Court, accordingly, finds *Barkouras* readily distinguishable from the current matter.

Plaintiff also provides scant argument in support of her contention that numerosity is satisfied. While Plaintiff aptly cites case law discussing the basic considerations a Court makes when considering numerosity, she fails to argue that such considerations are met here. Plaintiff does not even make the bald assertion that joinder is impracticable. (*See* Pl.'s Class Moving Br. 8–9.) Instead, Plaintiff merely states that "the evidence shows that numerosity is easily met . . . . [because] Defendants have identified 245 individuals who meet the proposed class definition." (*Id.* at 9.)

Moreover, Plaintiff's assertion that the Redacted List identifies 245 individuals who meet the Amended Class Definition is tenuous. This is particularly true because the Redacted List is the only evidence that Plaintiff points to in support of her assertion that the numerosity prong is satisfied. (*Id.* at 8–9.) As discussed in I.B. *supra*, the Redacted List was produced in response to Interrogatory No. 2, which read "[p]lease identify each person who meets the definition of the proposed [class] as set forth at ¶ 4[9] of the Complaint, indicating the total number of such persons." (Decl. of Henry Wolfe *5, Ex. A to Pl.'s Class Moving Br., ECF No. 165-3.) In response, Lonstein Defendants agreed to "produce a redacted list of individuals and businesses similarly situated to Plaintiff in that they received a letter from the Lonstein Law Offices outlining their unauthorized use of cable programming and did not pay any amounts in resolution, remuneration, or settlement." (*Id.* at *6.) The Court previously noted that Signal Defendants' objections to Plaintiff's use of the Redacted List "appear[ed] to be well-founded as the discrepancies between the Proposed Class List and the [Amended] Class Definition are obvious." (Jan. 31, 2019 Letter Op. & Order at 3.) The Redacted List does not purport to contain the names of individuals who

were in fact authorized for a residential or non-commercial account, nor does it purport to contain the names of individuals who had a DirecTV representative install the service at their places of business.

Plaintiff's NJRICO claim states that "Defendants attempted to extort money from . . . Plaintiff . . . and other small business owners by accusing them of 'unauthorized' use of DirecTV 'non-commercial' subscriptions at their places of business, even though the services and subscriptions were *authorized* and activated *at the places of business* by DirecTV agents at the time of installation, as reflected in DirecTV's records."[12] (Pl.'s Class Moving Br. 1) (emphasis in original). Whether a putative plaintiff was authorized for a residential or non-commercial account is, therefore, a foundational attribute of Plaintiff's Proposed Class List. Indeed, Plaintiff's Amended Class Definition explicitly seeks to join "[a]ll owners of New Jersey businesses who . . . were sent correspondence by . . . Lonstein Defendants regarding allegedly unauthorized use by the business of residential or non-commercial DirecTV satellite television services, and whose DirecTV service was installed at the business location and authorized for a residential or non-commercial account . . . ." (Pl.'s Class Moving Br. 4–5.) There appears, therefore, to be a discrepancy between Plaintiff's Proposed Class List and the Redacted List because the Redacted List does not purport to contain the names of individuals who were in fact authorized for a residential or non-commercial account.

Plaintiff appears to have acknowledged this discrepancy when she served Supplemental Interrogatory No. 2 on Lonstein Defendants. Supplemental Interrogatory No. 2 states: "[p]lease identify all New Jersey individuals and businesses who were authorized by a DirecTV agent to use

---

[12] The Court notes that Plaintiff does not cite to any records from DirecTV in support of her contention that numerosity is satisfied.

residential or non-commercial DirecTV satellite television services in their place[s] of business." (Lonstein Suppl. Interrog. Resp.*9, Ex. A to Decl. of David DiSabato, ECF No. 165-2.)[13] Lonstein Defendants responded that they "lack knowledge whether any such individuals or businesses exist" and that "none of . . . Lonstein Defendants have information regarding who was authorize[d] by a DirecTV agent to use residential or non-commercial . . . services in their place[s] of business." (*Id.*)

Plaintiff offers no rebuttal regarding this discrepancy and she does not refute Lonstein Defendants' contention that such a discrepancy is fatal to her motion. Plaintiff's riposte to Lonstein Defendants' arguments regarding numerosity is expressed in a single sentence containing no argument or citation to legal authority. (Pl.'s Class Certification Reply Br. 1.) A critical component of Plaintiff's argument and the class she seeks to certify is that she and other business owners received letters from Lonstein Defendants claiming improper commercial exhibition of DirecTV programming, despite being authorized to do so with a non-commercial account. Plaintiff points to no evidence in the record, nor advances any argument in support, that indicates the Redacted List contains the names of individuals who were authorized for non-commercial use.

"When courts harbor doubt as to whether a plaintiff has carried her burden under Rule 23, the class should not be certified." *Mielo,* 897 F.3d at 483 (citing *Hydrogen Peroxide,* 552 F.3d at 321). Based on the record before it and because Plaintiff does not sufficiently address Defendants' arguments about the contents of the Redacted List, the Court finds that Plaintiff has

---

[13] Plaintiff's Supplemental Interrogatory No. 3 seeks similar information. (*See* Lonstein Suppl. Interrog. Resp. *10.) Lonstein Defendants responded that they "do not have the ability to identify the recipients of its correspondence who were originally authorized for only residential or non-commercial accounts . . . Lonstein Defendants have no access to DirecTV's installation records." (*Id.*)

failed to establish the numerosity prong by a preponderance of the evidence. The Court, accordingly, denies without prejudice Plaintiff's Motion to Certify Class.[14]

## B. The Court Declines to Reach the Merits of Defendants' Motions for Summary Judgment

A court must decide whether to certify a class at "an early practicable time." Fed. R. Civ. P. 23(c)(1). "The time at which the court finds it appropriate to make its class-action determination may vary with the circumstances of the particular case," but a court should be cautious when a class certification decision occurs at the same time as, or following, a decision on the merits. *See* 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1785.3 (3d ed. 2019).

Because this is the first time Plaintiff's motion has been before the Court, and because the Court finds good cause to permit Plaintiff to file a new Motion for Class Certification, the Court denies Plaintiff's Motion without prejudice and terminates Defendants' Motions for Summary Judgment. Defendants may refile their motions after Plaintiff has been given a final opportunity to file a new class certification motion. *See, e.g., Zangara v. Zager Fuchs, P.C.*, No. 17-6755, 2019 WL 6310056, at *4 (D.N.J. Nov. 25, 2019) (denying without prejudice the plaintiff's motion for class certification and terminating motions for summary judgment, pending class certification determination); *see also In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, No. 11-7382, 2018 WL 6819331, at *3 (D.N.J. Dec. 28, 2018) (denying defendant's request to stay briefing on plaintiff's third motion for class certification and denying defendant's request for leave to file motion for summary judgment prior to adjudication of the class certification motion, noting

---

[14] Because the Court finds Plaintiff has failed to establish numerosity, it does not reach the merits of the parties' remaining arguments.

17

that although "[p]laintiff ultimately may not prevail on certification" plaintiff's renewed motion sought to cure deficiencies the court had previously identified).

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff's Motion to Certify Class must be denied because Plaintiff fails to demonstrate by a preponderance of the evidence that the numerosity requirement is satisfied. The Court declines to decide Defendants' Motions for Summary Judgment and permits Plaintiff a final opportunity to seek class certification. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated: April 30, 2020